IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

David Lee Wall,               )    Civil Action No.: 8:12-cv-03152-RMG-JDA

            Plaintiff,   )

                    )

     vs.               )    **REPORT AND RECOMMENDATION**

                    )    **OF MAGISTRATE JUDGE**

Carolyn W. Colvin,[1]      )

Commissioner of Social Security,  )

                    )

         Defendant.  )

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[2]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and for social security income ("SSI") benefits.[3]  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]A Report and Recommendation is being filed in this case, 1 in which one or both parties declined to consent to disposition by a magistrate judge.

[3] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI in May 2010, alleging disability as of January 1, 2006.   [R. 106–115.].[4]   The claims were denied initially and on reconsideration by the Social Security Administration ("the Administration").   [R. 47–53]. Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 74–75], and on August 4, 2011, ALJ Edward T.  Morriss held a hearing on Plaintiff's claims [R. 22–42].

The ALJ issued a decision on October 19, 2011, finding Plaintiff not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act"). [R. 6–15.] At Step 1,[5] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2011 and had not engaged in substantial gainful activity since January 1, 2006, his alleged onset date.   [R. 10, Findings 1 & 2.]   At Step 2, the ALJ found Plaintiff had a severe impairment of status-post cervical fusion.   [R. 10, Finding 3.]   At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 10, Finding 4.]  The ALJ specifically considered Listing 1.04. [R. 10-11.]     Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift and carry up

---

[4]Prior to these applications, Plaintiff applied for DIB on December 7, 2007 alleging an onset date of March 15, 2006.  [R. 122.]  The Commissioner denied that claim on initial review in January 2008.  [R. 54–57.] Plaintiff filed a second application for DIB on February 27, 2009 alleging an onset date of March 15, 2006. [R. 146.] The Commissioner denied Plaintiff's second application in April 2009.  [R. 58–61.]

[5]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> to 20 pounds occasionally and 10 pounds frequently and
> stand, walk, and sit for 6 hours in an 8-hour day, except that
> the claimant can never climb ladders and can perform
> occasional overhead reaching, bilaterally.

[R. 11, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work.  [R. 13, Finding 6.]  At Step 5, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform  [R. 14, Finding 10].  Consequently, the ALJ concluded Plaintiff was not under a disability as defined by the Act from the alleged onset date of January 1, 2006through the date of the decision.  [R. 14, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Appeals Council declined.  [R. 1-3.]  Plaintiff filed this action for judicial review on November 1, 2012.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred by:

(1)    violating Acquiescence Ruling 90-4[6] respecting [Plaintiff's] prior applications for disability [Doc. 18 at 2-5];

(2)    failing to properly identify the nature and severity of [Plaintiff's] impairments at Step Two of the sequential evaluation process [*id.* at 5–6; *see also* Doc. 22 at 1–3 (responding to arguments raised by the Commissioner)];

(3)    breaching the rules and regulations governing the method by which [Plaintiff's] pain and credibility should have been assessed [Doc. 18 at 6–22; *see also* Doc. 22 at 3]; and

---

[6]Acquiescence Ruling 90-4(4) (July 16, 1990) states that "If the adjudicator determines that mental incompetence prevented the claimant from understanding the procedures for requesting administrative review of a determination, he or she will not apply res judicata or administrative finality even if more than four years have elapsed (two years in Title XVI cases), but will consider the case on its merits and issue a determination or decision that is subject to further administrative review."

3

(4)    rejecting the opinion of [Plaintiff's] treating physician [Doc. 18 at 22–25; *see also* Doc. 22 at 3–4].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because

(1)    Acquiescence Ruling 90-4(4) is not applicable to this case [Doc. 20 at 12–14];

(2)    the ALJ properly evaluated the severity of all of Plaintiff's impairments, both severe and non-severe [*id*. at 14–15];

(3)    the ALJ reasonably declined to fully credit Plaintiff's allegations of disabling pain [*id*. at 15–20]; and

(4)    the ALJ carefully weighed Dr. Netherton's medical source opinion and reasonably discounted it [*id*. at 20–25].

The Commissioner contends that, because substantial evidence supports the Commissioner's decision, the decision should be affirmed, and Plaintiff's appeal should be denied.  [*Id*. at 25.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than

a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42

U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

     In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C.

§ 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[7]  With remand under sentence

---

[7] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been
superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the
requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*,
*Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No.
TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.
2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807
F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

in considering disability claims).  The ALJ must consider whether (1) the claimant is

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6
(1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.   *See id.* §§ 404.1521, 416.921.   When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.   42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).   The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").   Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant

disabled without considering the claimant's age, education, and work experience.[8]   20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.   *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[9] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.   *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[10]   20

---

[8]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[9]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[10]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining

11

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31

(4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

exertional limitations).  When a claimant suffers from both exertional and nonexertional

limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case,

the Commissioner must use a vocational expert to establish the claimant's ability to

perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50

("Because we have found that the grids cannot be relied upon to show conclusively that

claimant is not disabled, when the case is remanded it will be incumbent upon the

[Commissioner] to prove by expert vocational testimony that despite the combination of

exertional and nonexertional impairments, the claimant retains the ability to perform

specific jobs which exist in the national economy.").  The purpose of using a vocational

expert is "to assist the ALJ in determining whether there is work available in the national

economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the

vocational expert's testimony to be relevant, "it must be based upon a consideration of all

other evidence in the record, . . . and it must be in response to proper hypothetical

questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783

F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant

---

attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or
hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent

evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make

14

a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Credibility Determination**

Plaintiff argues the ALJ improperly evaluated Plaintiff's testimony regarding his allegations of disabling pain. Specifically, Plaintiff contends the ALJ improperly used the RFC to undermine Plaintiff's credibility and relied on a lack of objective medical evidence to discredit Plaintiff's pain allegations without comparing Plaintiff's statements regarding pain with the evidence of record. [Doc. 18 at 11–22.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. SSR 96-7p, 61 Fed. Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions"). In evaluating the intensity and persistence of the claimant's pain, the ALJ should consider evidence other than the claimant's complaints, including (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain; (5) treatment, other than medication, the claimant

18

receives or has received for relief of the pain; (6) any measures the claimant uses or has used to relieve the pain; and (7) any other factors concerning the claimant's functional limitations and restrictions due to the pain.  20 C.F.R. § 404.1529(c)(3).  Moreover, to "determin[e] the extent to which . . . symptoms, such as pain, affect [the Plaintiff's] capacity to perform basic work activities," the ALJ is to "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence," which includes medical and other evidence.  *Id.* § 404.1529(c)(4); *see also, e.g.*, *Craig*, 76 F.3d at 595 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.").

Here, the ALJ found Plaintiff's "medically determinable impairment could reasonably be expected to cause some of his alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the etent they are inconsistent with the above residual functional capacity assessment."  [R. 11–12.]  After this statement, the ALJ stated:

> While the claimant testified that he was in special education classes in school, this is inconsistent with his past relevant work, which includes restoring old houses.  The claimant has not produced school records supporting this claim.
>
> In May 2006, following a diagnosis of cervical disc disease, the claimant underwent anterior cervical discectomy and fusion with plating at C5-6 and C6-7.  (Exhibit 3F).  While the claimant complained of some pain in the months following his surgery,

in January 2007 he underwent a functional capacity evaluation, which went well, and was told that he would be released to light duty work in February 2007.  The results of the functional capacity evaluation indicated that the claimant is able to work at the medium-heavy physical demand level.

December 2006 treatment notes indicate that the claimant had fairly good range of motion in his cervical spine and normal strength in his bilateral upper extremities.  (Exhibit 3F).  The claimant requested more narcotic pain medication.  In March 2007, the claimant's surgeon, Dr. McDonald, stated that the claimant was at maximum medical improvement with a 15% impairment to his cervical spine.  The claimant was restricted from returning to heavy-duty work and reaching above his shoulder, but is able to lift 30 pounds.

Dr. Mark Netherton has treated the claimant for pain management.  At an August 2010 visit, the claimant stated that he was doing moderately well and was able to ambulate without difficulty.  (Exhibit 17F).  Upon examination in March 2010, despite his complaints of neck, shoulder, and arm pain, the claimant had 5/5 grip strength in his right hand and 4/5 strength in his left, with normal biceps, triceps, and no atrophy. Sensation was intact bilaterally. Dr. Netherton did note at this time that the claimant could not perform heavy work.  In June 2010, the claimant reported his pain as a "3" on a scale of 1-10.  He again showed good grip strength in both hands with intact sensation.  Dr. Netherton's impression was of cervical post-laminectomy radiculitis. Despite his minimal limitations on examination, Dr. Netherton stated in December 2010 that the claimant has significant impairment in mobility and should pursue disability.  (Exhibit 21F).  In March 2011 the claimant had a normal gait, and his musculoskeletal strength of the upper extremities had improved to 5/5 bilaterally, with 5/5 grip strength bilaterally.  In June 2011, the claimant presented with an antalgic gait for the first time, with no explanation.  (Exhibit 23F).

Images taken of the claimant's cervical spine in July 2006, following his surgery, showed only mild multilevel cervical spondylosis.  It was noted that the claimant had instrumental fusion at C5 through C7 without evidence of complication. (Exhibit 25F).  Follow up images taken in March 2007 showed no changes at C5-C7 and left foraminal narrowing at C3-C4

related to posterior osteophytes, mostly in the nonvertebral joint. This did not reflect significant change.

Pursuant to 20 CFR §404.1527, §416.927, and Social Security Rulings 96-6p and 96-2p, I have considered the medical opinions of the claimant's treating physicians, evaluating physicians, and the state agency medical consultants.

The claimant's vocational rehabilitation record indicates that episodic attendance and lack of enthusiasm, rather than functional limitations, were both the primary bars to his employment. (Exhibit 27F).

Dr. Mark Netherton issued a medical source statement in March 2011. (Exhibit 22F). He indicated that, in his opinion, the claimant has failed spinal surgery syndrome, cervical degenerative disc disease, and cervical plexus disorder resulting in neck, shoulder and arm pain, weakness in the left arm, depression and sleep disorder. The claimant has reported pain with range of motion greater than 45 degrees of abduction. Dr. Netherton stated that, due to the claimant's allegations of pain, he can stand or walk no more than 3 hours total in an 8-hour day, and can sit no more than an hour before changing positions. He stated that the claimant would need to rest for five hours total in each 8-hour workday, and would miss more than 3 days of work each month. Dr. Netherton also imposed restrictions on the claimant's ability to lift, stoop, reach, handle, and rotate his neck. While Dr. Netherton noted in his treatment of the claimant that the claimant could afford no further treatment and should seek disability, his determination that the claimant is disabled is inconsistent with earlier reports, including the functional capacity evaluation, the vocational rehabilitation record, and his own examinations of the claimant, showing the claimant's normal strength in his upper extremities and the remaining medical evidence of record, including mild clinical findings. Additionally, Dr. Netherton has not provided details as to what aspect of the claimant's condition renders him disabled. As such, I have given this opinion little weight.

The medical opinions of the state agency medical consultants are generally consistent with the medical evidence of record, and their opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions. (Exhibits 7F, 16F, and 19F).

21

> The claimant's allegations of such significant limitations and pain are not fully consistent with the medical evidence of record. Therefore, I cannot find the claimant's allegations that he is incapable of all work activity to be fully credible.

[R. 12–13.]

Upon reviewing the ALJ's decision, the Court finds that the ALJ failed to properly consider all of the relevant evidence and/or explain his findings when making his credibility determination. For example, the ALJ did not expressly consider or explain his consideration of the alleged side effects of Plaintiff's medication on his ability to work even though these side effects were reported in a disability report and Plaintiff testified about some side effects at the hearing. The ALJ recognized that Plaintiff takes morphine four times per day, muscle relaxants, and a sleep aid [R. 11] but failed to address Plaintiff's testimony that he has to lie down when he takes morphine because it makes him "really loopy" and that the muscle relaxant makes him "real tired." [R. 30–31.] Plaintiff also testified to taking medication for migraines or headaches [R. 33] and indicated that he took Tegretol for seizures [R. 177], but the ALJ never addressed the side effects of any of these medications on Plaintiff's ability to function in a work setting. The ALJ's decision does not adequately consider and/or explain the side effects of Plaintiff's medications in assessing Plaintiff's credibility with respect to his subjective pain complaints and, thus, the Court cannot find that the ALJ's decision with respect to Plaintiff's credibility is supported by substantial evidence.[11]

---

[11]Additionally, the ALJ appears to rely on the treatment notes of Dr. Mark Netherton, who treated Plaintiff for pain management, to discredit Plaintiff's subjective pain complaints. [*See* R. 12–13.] However, the ALJ chose to use portions of Dr. Netherton's treatment notes to discredit Plaintiff's complaints of pain even though the ALJ gave little weight to Dr. Netherton's overall opinion that Plaintiff was disabled. [R. 12–13.] *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ( "The ALJ is not entitled to pick and choose from

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly consider the side effects of Plaintiff's medications at Step 3 of the sequential evaluation is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error[12].

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

January 22, 2014
Greenville, South Carolina

---

a medical opinion, using only those parts that are favorable to a finding of nondisability."); *see also Seabolt v. Barnhart*, 481 F.Supp.2d 538, 548 (D.S.C. 2007) ("The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say his determination was supported by substantial evidence.").

[12]While the Court finds Plaintiff's argument regarding the ALJ's application of *res judicata* is likely without merit, the Court hesitates to conclude the ALJ properly applied *res judicata* because there is no indication that the ALJ made a determination, one way or the other, regarding the application of *res judicata* to Plaintiff's prior filings. Further, there is no evidence in the record to support a finding that Plaintiff, who was pro se in his original two filings, failed to understand the appeal process. Out of an abundance of caution, however, the ALJ should, upon remand, include a proper determination of whether *res judicata* applies to Plaintiff's claim.