## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| David Lee Wall, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 8:12-3152-RMG |
| ) | |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____ ) | |

     Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on January 23, 2014, recommending that the Court reverse the decision of the Commissioner. (Dkt. No. 23). The Commissioner advised the Court she does not intend to file objections to the Report and Recommendation. (Dkt. No. 25). As more fully set forth below, the Court reverses the decision of the Commissioner and remands for further action consistent with this order.

### Legal Standard

     The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one

-2-

or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Where the claimant has multiple impairments but none satisfy independently the criteria for a listed impairment, the Commissioner is obligated to consider the combined effect of the various impairments and determine whether they are the medical equivalent of the criteria of a listed impairment. 42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen*, 889 F.2d 47, 49-50 (1989); 20 C.F.R. § 416.926.

If the claimant does not have a listed impairment or the medical equivalent of a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available "work which

-3-

exists in significant numbers either in the region where [the claimant] lives or in several regions of the country" he can perform in light of the RFC determination. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the burden shifts to the Commissioner to "show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record,

-4-

consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Under the Treating Physician Rule, preference is generally given to the opinions of treating physicians over the opinions of non-examining chart reviewers or one time examiners. 20 C.F.R. § 404.1527(c)(1),(2).

The Commissioner has recognized that in a certain class of cases, particularly those involving complaints of chronic pain, there may not be traditional objective medical evidence to substantiate the claimant's disability claim. *Id.* § 404.1529(c)(3). The Commissioner pledges to consider "all available evidence," which may include testimony regarding the claimant's daily activities, description of her pain, precipitating factors, the effectiveness and side effects of pain medications, and measures utilized to relieve pain. *Id.* Further, the Commissioner commits to considering the full longitudinal medical record, rather than brief snapshots that may reflect short term or temporary relief, and the claimant's persistent efforts to seek out specialists or other sources to obtain relief from pain. SSR 96-7P, 61 Fed. Reg. 34483, 34487 (July 2, 1996).

### Factual Background

Plaintiff suffered a work related injury to his cervical spine and was determined to have a left sided disc rupture at C6-7. Tr. 245-6. He underwent a cervical discectomy and multi-level fusion on May 8, 2006, performed by a neurosurgeon, Dr. George Khoury. Tr. 234-35. Although Plaintiff's wound site healed without complications, he complained shortly after surgery of continuing pain and discomfort in his neck and shoulders. Tr. 247-49. A MRI of the cervical spine, performed on July 28, 2006, to address Plaintiff's complaints of neck and upper

back pain, did not demonstrate evidence of nerve impingement or any other abnormality that might explain Plaintiff's persistent pain complaints. Tr. 237-38. Plaintiff underwent a functional capacity evaluation by a non-physician on January 4, 2007, and Plaintiff was found to be able to do medium to heavy physical labor eight hours per day. Tr. 260. Dr. Khoury documented Plaintiff's multiple complaints of neck and shoulder pain in an office note of March 5, 2007, but did not think "anything else is going on." Tr. 250. Ultimately, Dr. Khoury found that Plaintiff had a 15% disability to the cervical spine and determined that he permanently could not lift greater than thirty pounds. Tr. 250.

When Plaintiff's complaints of severe neck and shoulder pain persisted, he was referred in July 2007 to Dr. Mark Netherton, a pain medicine specialist. Dr. Netherton documented Plaintiff with normal motor function, muscle tone, and gait but the patient consistently and persistently complained over four years of treatment and more than two dozen office visits of pain in his neck and upper extremities. Tr. 306-21, 352-62, 394-95, 414-15. Dr. Netherton documented that Plaintiff's pain symptoms were better with resting and medications and worse with any activity, particularly movement or use of his upper extremities. Tr. 309-10, 313-14, 316, 320, 358, 360, 395, 414. Dr. Netherton further documented that Plaintiff's pain symptoms were aggravated by standing and walking and his chronic pain created problems with his sleep. Tr. 312, 353-54, 411-12, 419. Dr. Netherton also documented abnormalities on physical examination, noting that Plaintiff "has pain on abduction bilateral upper extremities at greater than forty-five degrees up to ninety degrees in basically the C5-6-7 distribution down to about his elbows. He has pain on flexion, extension, and side to side motion of the cervical spine." Tr. 394, 414, 428. Dr. Netherton treated Plaintiff's complaints of severe and persistent pain with

-6-

daily dosages of morphine.

Dr. Netherton completed a Medical Source Statement regarding Plaintiff on March 30, 2011. At that time, Dr. Netherton had treated the claimant for over three and one-half years. He listed Plaintiff's symptoms to include neck, shoulder, and arm pain and sleep disorder. Tr. 428. He described Plaintiff's pain as "[d]aily neck [and] shoulder pain. Constant ache. Worsened by activity [and] motion. Burning pain in left arm." *Id.* He further described reduced range of motion in Plaintiff's left arm "at greater than 45 [degrees] of abduction." *Id.* Dr. Netherton further documented Plaintiff's problems with "chronic sedation" as a side effect of his pain medications. Tr. 429. Based upon these findings, Dr. Netherton opined that Plaintiff could stand or walk continuously only one hour per workday and cumulatively three hours in an eight-hour workday. Tr. 430. He also stated that Plaintiff could not sit continuously longer than one hour per workday and would need time to rest after either sitting or standing. Tr. 429-430. These opinions were consistent with a December 8, 2010, office note of Dr. Netherton in which the pain specialist had stated that Plaintiff has "significant impairment" and "should pursue social security disability." Tr. 414.

Dr. Netherton's findings and opinions were similar to conclusions reached by South Carolina Vocational Rehabilitation after Plaintiff participated in a training program in March and early April 2010. Plaintiff was noted to be missing classes because of complaints of pain and difficulty sleeping. Tr. 493, 494. The vocational assessment ultimately concluded with a finding that Plaintiff "is not ready to pursue competitive employment at this time." Tr. 494. Plaintiff's potential for employment "appears guarded based on pain complaint/ behaviors, sleep issues, problems [with] attendance, lack of [high school] diploma/GED, poor reading skills, [and]

questionable motivation." Tr. 494-95.

Plaintiff testified at an administrative hearing before the Administrative Law Judge ("ALJ") conducted on August 11, 2011. Plaintiff testified that he spends most days essentially lying down because of his chronic pain and the sedative effects of his pain medication. He explained that he is unable to stand longer than forty-five minutes or sit more than thirty to forty minutes and could not sustain effort over an eight-hour day. Tr. 28-29, 35-36, 40. Plaintiff further testified that the morphine he takes daily around midday "makes me really loopy" and causes him to go to bed. Tr. 29-30.

The administrative record includes various RFC Assessments performed by non-examining and non-treating physicians. Two such assessments were performed by Dr. Jean Smolka on January 25, 2008, and April 10, 2009. According to the South Carolina Board of Medical Examiners, Dr. Smolka, is trained as a pediatrician.[1] Dr. Smolka concluded that Plaintiff could sit or stand six hours in an eight-hour day and that Plaintiff's statements about limitations on sitting and standing were "not credible." Tr. 290, 337, 341. Plaintiff's medical records were also reviewed by Dr. Mary Lang, a family physician.[2] In an assessment dated August 12, 2010, Dr. Lang concluded Plaintiff could sit or stand six hours in an eight-hour workday. Plaintiff's medical chart was reviewed by Dr. William Cain on November 11, 2010, and he also concluded Plaintiff could sit or stand six hours a day. According to the South Carolina Board of Medical Examiners, Dr. Cain's speciality is listed as "administrative

---

[1]www.llr.state.sc.us (follow "Licensee Lookup" hyperlink; then select "Medical Board" in drop-down menu; then enter name "Smolka")

[2]www.llr.state.sc.us (follow "Licensee Lookup" hyperlink; then select "Medical Board" in drop-down menu; then enter name "Lang")

medicine" and he is reported to be a 1952 medical school graduate.[3]

The ALJ issued a decision on October 19, 2011, finding that Plaintiff had the RFC to perform light work and could sit or stand six hours in an eight-hour workday. Tr. 11. Based on the testimony of a vocational expert, who relied on the ALJ's RFC finding, the ALJ concluded that there were sufficient jobs in the national marketplace Plaintiff could perform and he was, thus, not disabled under the Social Security Act. Tr. 14. In reaching these conclusions, the ALJ recognized that Plaintiff had not returned to work since his 2006 cervical spine fusion surgery and that he complained of severe and persistent pain that required daily treatment with morphine. Tr. 10-13. He also noted the opinions of his primary and long-serving specialist physician, Dr. Netherton, that Plaintiff had significant impairments that effectively disabled him from work. Tr. 12-13. The ALJ found, however, that while Plaintiff's medically determined impairment could reasonably be expected to produce some of his symptoms, Plaintiff's statements regarding the "intensity, persistence, and limiting effects of these symptoms are not fully credible ." Tr. 11. The ALJ also gave "little weight" to Dr. Netherton's opinions, contending that they were inconsistent with other evidence in the medical record, including the immediate postoperative records, Dr. Netherton's own office notes, and the South Carolina Vocational Rehabilitation records. Tr. 13. The ALJ further noted that "Dr. Netherton has not provided details as to what aspect of the claimant's condition renders him disabled." Tr. 13. On the other hand, the ALJ gave "some weight" to the opinions of the "state agency consultants" but did not specify to which chart reviewers he was referring or the opinions upon which he relied. Tr. 13.

---

[3]www.llr.state.sc.us (follow "Licensee Lookup" hyperlink; then select "Medical Board" in drop-down menu; then enter name "Cain")

## Discussion

Plaintiff's disability claim is impacted by two legal standards which traditionally favor claimants, the Chronic Pain rules and the Treating Physician Rule. The Commissioner recognizes that a claimant may be disabled by chronic pain even though there might not be objective evidence to support the severity of the claimant's symptoms. In an effort to balance the Commissioner's need to document a claimant's disability claim with the reality that some legitimate claims of severe pain cannot be proven with radiographic images or laboratory studies, the Commissioner has established a two-step process to evaluate a claimant's credibility regarding complaints of severe pain. First, the claimant must establish the presence of sufficient objective findings to show a "medically determinable impairment[] that could reasonably be expected to produce your symptoms." 20 C.F.R. § 404.1529(c)(1). Once Plaintiff has satisfied that threshold requirement, the Commissioner pledges to consider a variety of evidence outside traditional medical testing, including (1) the claimant's activities of daily living; (2) the "location, duration, frequency, and intensity" of pain symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications; (5) treatment received, other than medications; and (6) measures used to relieve the pain ("e.g. lying flat on your back, standing 15 to 20 minutes every hour, sleeping on a board, etc."). *Id.* § 404.1529(c)(3)(i)-(vi). Further, the Commissioner pledges to consider "[s]tatements and reports from the individual and from treating and examining physicians" and to weigh the opinions of non-examining sources under the standards of the Treating Physician Rule. SSR 96-7P, 1996 WL 374186, at *5, 8 (July 2, 1996).

A review of the ALJ's decision fails to discern any meaningful application of these

-10-

Chronic Pain standards in the determination of Plaintiff's credibility. After recognizing that Plaintiff did have an underlying determinable medical condition that could produce pain symptoms, the ALJ then concluded that the complaints were "not fully credible to the extent they are inconsistent with the . . . residual functional capacity assessment." Tr. 11-12. In making that credibility assessment, the ALJ failed to address and weigh critical issues set forth in the Chronic Pain rules, including Plaintiff's daily activity of lying in bed most of the day, his persistent and consistent complaints of severe pain since his 2006 surgery in his neck and upper extremities, and the daily administration of morphine and its sedative effects. A meaningful assessment of Plaintiff's credibility cannot be made under these standards without the ALJ addressing these critical issues. Reversal and remand are necessary for the ALJ to address these regulatory standards for assessing a plaintiff's credibility regarding complaints of severe pain.

The ALJ's evaluation of the expert opinions in the record also falls far short of the clearly established standards of the Treating Physician Rule. In the event the ALJ does not find the opinion of the treating physician to be controlling, he pledges to consider and weigh those opinions pursuant to six standards, including whether the physician is a treating physician, has examined the patient, and is a specialist and whether his opinions have been consistent and are supported in the record. 20 C.F.R. § 404.1527(c). Again, a review of the evaluation of the opinions of Dr. Netherton, Plaintiff's long-serving treating-specialist physician, were largely dismissed without reference to the standards of the Treating Physician Rule. No weight was noted to be given for Dr. Netherton's treating relationship or the fact that he is a pain specialist. On the other hand, weight was given to unnamed "state agency medical consultants" without any application of the standards of the Treating Physician Rule or even identifying which opinions

-11-

were given weight and why. Tr. 13. On remand, the expert opinions of the treating physicians as well as the chart reviewers should be reviewed under the standards of the Treating Physician Rule.

The Court further finds that the ALJ's statements that Dr. Netherton's opinions were inconsistent with his own office records and the South Carolina Vocational Rehabilitation records are not supported by substantial evidence. Tr. 13. Dr. Netherton repeatedly identified Plaintiff's complaints of neck and shoulder pain and prescribed treatment with morphine, certainly reflecting the seriousness with which he regarded Plaintiff's complaints. He documented abnormalities on physical exam arising from the cervical spine and aggravating factors, including use of upper extremities, standing and walking. *See* Tr. 306-21, 352-62, 394-95, 414-15. The Court finds Dr. Netherton's March 30, 2011 Medical Source Statement (Tr. 428-32) fully consistent with his earlier office records and much of the information obviously derives from those records. Further, Dr. Netherton's findings are highly consistent with the conclusions from Plaintiff's several-week assessment at South Carolina Vocational Rehabilitation, which concluded he was "not ready to pursue competitive employment at this time" and potential for future employment was "guarded". Tr. 492-95.[4]

## Conclusion

Based on the foregoing, the Court hereby reverses the decision of the Commissioner, pursuant to 42 U.S.C. § 405(g), and remands the matter to the Commissioner for further action consistent with this opinion.

---

[4] To the extent that Dr. Netherton has not "provided details as to what aspect of the claimant's condition renders him disabled" to the satisfaction of the ALJ, he should recontact the physician and request that he supplement the information provided. Tr. 13.

-12-

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

February ___7___, 2014
Charleston, South Carolina

-13-